UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
WEIPING CAO,                                                                  :
                                                                              :
                                                        Plaintiff,            :
                                                                              :        <u>MEMORANDUM & ORDER</u>
                                 -against-                                    :
                                                                              :        No. 1:20-cv-01180 (ENV) (RML)
LANDCO H&L, INC., BUFFALO EB-5                                                 :
PARTNER CORP., XIAOMEI LU, AND                                                :
JINNENG BAO,                                                                  :
                                                                              :
                                                        Defendants.           :
------------------------------------------------------------- x

VITALIANO, D.J.

  Plaintiff Weiping Cao initiated this action against defendants Jinneng Bao, Xiaomei Lu,

Landco H&L, Inc. ("Landco"), and Buffalo EB-5 Partner Corp., bringing claims for breach of

fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, breach of contract, and breach

of personal guaranty.  Essentially, all claims arise out of plaintiff's transactions with defendants

with respect to the development of a real estate project.  At the core of the lawsuit, Cao alleges

that Landco has defaulted on a loan she provided to it, and that Bao and Lu have failed to satisfy

their promise to personally guaranty that loan.  Cao now moves for summary judgment, pursuant

to Federal Rule of Civil Procedure 56, against Landco on her breach of contract claim, and

against Bao and Lu on her personal guaranty claim.  For the reasons stated below, plaintiff's

motion is granted.

Background[1]

Central to the parties' dispute is the United States' EB-5 Immigrant Investment Program, which permits qualified foreign investors to obtain an immigration "green card" signifying the grant of permanent residency, for themselves and their family members if they make a "necessary investment in a commercial enterprise in the United States" that, in addition to meeting other qualifications, leads to the creation or preservation of at least ten permanent full-time jobs for qualifying employees. *See* Am. Compl., Dkt. 29, ¶ 6, 13; 8 U.S.C. § 1153(b)(5)(A)(ii). [2]

Cao, a Chinese national, was introduced in 2017 to Bao and Lu, a married couple who, at that time, were soliciting aliens with an interest in the immigration program to invest, pursuant to the program, in a hotel development project in Buffalo, New York. *See id.* ¶¶17–21. Cao decided to invest $500,000 in defendant Buffalo EB-5 Partner Corp., the corporation formed by Bao and Lu as an investment vehicle for financing the project. *Id.* ¶¶ 17, 21; *see also* Pl.'s R. 56.1 Statement, Dkt. 44, ¶ 1. The corporation would then loan Cao's $500,000 investment to Buffalo Hotel Management Inc., a real estate management company, which would then funnel the proceeds into its wholly-owned subsidiary, Landco, the entity responsible for actually developing the project. Am. Compl. ¶ 17–21. By March 2017, Cao had made her investment

---

[1] The background facts are drawn from the amended complaint and the submissions of the parties, including defendants' and plaintiff's statements of undisputed material facts made pursuant to Local Civil Rule 56.1 The facts are construed, as they must be in the summary judgment context, in the light most favorable to defendants, as the nonmoving parties. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir.2007); *see also Martin v. City of New York*, 793 F. Supp. 2d 583, 584 (E.D.N.Y. 2011).

[2] Congress established the EB-5 program as part of the Immigration and Nationality Act in 1990 to encourage foreign investment and spur job growth in the United States. 8 U.S.C. § 1153(b)(5).

and had filed the necessary petition with United States Citizenship and Immigration Services ("USCIS") to obtain conditional permanent alien resident status. *Id.* ¶ 22.

Cao's plan would soon crumble when, following her investment, Bao and Lu informed her that the hotel development project was quickly running out of cash. *Id.* ¶ 23. That news propelled the three business partners to devise a last-ditch effort to save the project. Cao, at Lu's urging,[3] would contribute out an additional $6.5 million—this time invested directly in Landco. In line with the plan to save the project, that loan was executed under an agreement providing for a three-year term with a payout of 7.5% annual interest, due on September 27, 2020. *Id.* ¶¶ 25, 37; *see also* Loan Agreement, annexed to Defs.' Opp'n., Dkt. 45, as Ex. E. Critically, the loan agreement contains a clause by which Bao and Lu agreed to be personal guarantors of the loan. *See* Loan Agreement ¶ 4. As such, the agreement is signed twice by Lu, once in her capacity as "CEO" of Landco, and the second time in her individual capacity as guarantor. *See generally id.*; D. 56.1 at 2–3. Separately, Bao signed in his individual capacity as guarantor. *Id.*

In the end, not even Cao's additional $6.5 million loan was enough to save the project, and her hopes of obtaining permanent resident alien status in the United States dwindled. Am. Compl. ¶ 28. On November 18, 2019, USCIS denied her I-526 petition for conditional legal residency, citing not only the project's lack of funding, but also the agency's doubts about its legitimacy and viability. *Id.* ¶ 29. Cao contends that defendants have failed to repay the now-mature loan, and, in failing to do so, Landco, the borrower, has breached its promise of repayment, while Bao and Lu have breached their personal guaranties.

---

[3] Although ultimately academic, the parties dispute whether both Lu and Bao, or solely Lu, asked Cao to make the loan. *See* Defs.' R. 56.1 Statement ("D. 56.1"), Dkt. 48, ¶ 2.

Legal Standard

A federal district court must grant summary judgment when, construing the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018). The moving party bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Sentry Ins. v. Brand Mgmt. Inc.*, 120 F. Supp. 3d 277, 284 (E.D.N.Y. 2015) (quoting *James River Ins. Co. v. Power Mgmt., Inc.*, 55 F. Supp. 3d 446, 453 (E.D.N.Y. 2014)). When assessing the merits of a summary judgment motion, a district court cannot "try issues of fact, but rather [must] 'determine whether there *are* issues of fact to be tried.'" *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 188 (E.D.N.Y. 2014) (quoting *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995)) (emphasis in original).

Not all facts, however, are material. A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986). For a dispute over material facts to be "genuine," the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Assertions of fact, moreover, must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

In opposing a motion for summary judgment, the nonmoving party "may not rely solely on 'conclusory allegations or unsubstantiated speculation' in order to defeat" the motion. *S. W.*

*ex rel. Marquis-Abrams*, 46 F. Supp. 3d at 188 (quoting *Scotto v. Almenas*, 143 F.3d 104, 155 (2d Cir. 1998). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Kindle v. Dejana*, 238 F. Supp. 3d 353, 365 (E.D.N.Y. 2017) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002)) (emphasis in original). Where it is clear that no rational finder of fact "could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Weiss v. Nat'l Westminister Bank PLC*, 278 F. Supp. 3d 636, 640 (E.D.N.Y. 2017) (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## Discussion

Under New York law, which the parties agree applies here, claims for breach of contract and breach of a personal guaranty may be established upon a showing of "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *D'Amato v. Five Star Reporting, Inc.*, 80 F.Supp.3d 395, 408 (E.D.N.Y.2015); *see also Rabobank Intl., N.Y. Branch v. Navarro*, 25 N.Y.3d 485, 492, 15 N.Y.S.3d 277 (2015) (explaining that a personal guaranty, which is a promise to fulfill the obligations of another party, is subject to the ordinary principles of contract construction). In interpreting a contract in accord with these principles, the first inquiry is whether the relevant terms are unambiguous. If an agreement is "complete, clear and unambiguous on its face," it will generally be enforced according to the plain meaning of its terms, unless there exists a valid affirmative defense. *Entity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotations omitted).

Here, the language of the loan agreement is precise and unambiguous.  Its terms set forth an agreement, dated September 27, 2017, between Cao as lender and Landco as borrower, providing for a $6.5 million loan, payable, together with the accrued interest of 7.5% per year, on September 27, 2020.  *Id.*  Moreover, paragraph 4 of the agreement also establishes both Lu and Bao as guarantors of the loan.  *Id.*  Finally, pivotal in the consideration of Cao's motion, the loan agreement contains Bao's signature as a guarantor, and Lu's signature in her capacity as CEO of Landco as well as in her personal capacity as guarantor.  *Id.*

For their part, defendants contest neither the existence of the agreement, nor plaintiff's interpretation of any of its terms, nor that they have failed to perform in accordance with its terms.  Instead, they attempt to parry plaintiff's thrusts by asserting various affirmative defenses that they argue bar the enforcement of an otherwise unambiguous contract.  Defs.' Opp'n. at 4–5.  First, defendants contend that a genuine material factual dispute exists as to whether Lu had the authority to bind Landco to the loan agreement.  *Id.* at 5.  Specifically, they point to ongoing litigation in Supreme Court, Erie County, between Landco and Li Li, the former controlling shareholder of Landco, in which Li claims to have either never transferred an ownership stake in the entity to Lu in 2015, or, alternatively, that by 2016—before the loan agreement was memorialized—Li had regained control of Landco.  *See* Defs.' Opp'n. at 4–5.  In short, defendants argue that the Erie County action graphically underscores the existence of a genuine issue of material fact because, should the state court decide in Li's favor, then Lu was not the majority owner of Landco at the time of its signing and, therefore, would not have had the requisite authority to sign the contract and bind Landco.  *Id.* at 5.

The argument is quite nuanced.  Defendants do not deny that, at the time that the agreement was signed, Landco held Lu out as its chief executive with the requisite authority to

bind the company.  Indeed, that is precisely Landco's position in the Erie County action.  *See Landco H&I, Inc. v 377 Main Street Realty, Inc.*, Dkts. 41–42, No. 802087 (N.Y. Sup. Ct. Erie Cty. Feb. 12, 2020).  In other words, defendants are not contesting Lu's ability to bind Landco—to the contrary, they expressly believe it to be true—but instead seek to use Li's contrary view in Supreme Court as a shield in this action.

At any rate, defendants' argument is more the red herring than the shield.  To start, it is hornbook law that, as principal, Landco is properly bound by the actions of its agent—here, Lu—if, at the time of signing, she was cloaked with either actual or apparent authority.  *See Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 122 (2d Cir. 1998).  In New York, moreover, apparent authority turns on how the actions of principal and agent are perceived by third parties, rather than the actual relationship between principal and agent."  *M&C Saatchi PR LLP v. Beer Frost, Inc.*, No. 16 Civ. 8866, 2019 WL 2717199, at *5 (S.D.N.Y. June 28, 2019).  It is "the authority which the principal holds the agent out as possessing or which he permits the agent to represent that he possesses and which the principal is estopped to deny." *F.D.I.C. v. United Gen. Title Ins. Co.*, No. 11 Civ. 4610 ENV, 2014 WL 3611835, at *3 (E.D.N.Y. July 3, 2014) (citing *Wen Kroy Realty Co. v. Pub. Nat'l Bank & Trust Co.*, 260 N.Y. 84, 92, 183 N.E. 73, 75 (1932)).

About this there is no dispute of material fact: at minimum, Lu possessed apparent authority to bind Landco to the loan agreement.  Dispositively, defendants concede that, at the time the contract was signed, Lu was an officer of Landco acting on behalf of the company.  *See, e.g.*, Defs.' Ans., Dkt. 32, ¶ 9 (stating that defendants "admit that Ms. Lu is the President of Landco"); Lu Decl., Dkt. 47, ¶¶ 1, 5.  Second, the agreement itself contains Lu's signature in her capacity as CEO of the company.  Finally, defendants do not argue, let alone offer a scintilla of

evidence to suggest, that Lu acted outside the scope of her authority, or that Cao was, at any point during the negotiations, put on notice that Lu was anything other than the chief executive of Landco, or that Lu's ownership stake in Landco was contested.  To the contrary, Landco consistently held Lu out as its agent, capable of binding it to the loan agreement; whether Lu actually possessed such authority is of no moment now.  *See Beer Frost, Inc.*, 2019 WL 2717199, at *5.  On this record, indisputably, Lu had the requisite actual or apparent authority to bind the company to the loan agreement.

The second string on the bow of defendants' argument sounds an equally sour note. Relying again on the Erie County action, defendants contend that the signatories on the loan agreement were possibly mistaken as to whether Lu was the controlling shareholder of Landco at the time of signing, and argue that, therefore, the loan agreement is unenforceable under the doctrine of mutual mistake.  Defs.' Mem. Opp. at 5.   Lu then seeks to add a second floor to the defense house of cards, arguing, in effect, that her agreement with Cao to provide a personal guarantee was part and parcel of the mutual mistake.  *Id.*

Defendants do not plausibly plead much less offer sufficient admissible evidence at summary judgment to establish the existence of mutual mistake; they merely point to the Erie County action as evidence that defendants might not be found to have the controlling interest that animated their agreements with Cao.  The doctrine of mutual mistake, however, requires much more.  Plainly, the party invoking mutual mistake must prove, *inter alia*, that the mistake exists at the time the contract is entered.  *E.g.*, *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699, 701–02 (S.D.N.Y. 2013).   In any event, by entering into the share transfer agreement with Li, Lu was on notice that breaching its terms would put her at jeopardy of losing her stake in Landco. As such, should Supreme Court, Erie County, decide that she breached her agreement with Li,

that holding would not support a plausible claim for mutual mistake here, and certainly not to deprive Cao the fruits of the contract since she was not party to the mutuality in which defendants seek refuge. *See ACA Galleries*, 928 F.Supp.2d at 702. Stated differently, Lu plainly bore the risk of such a mistake. *See De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 663 (S.D.N.Y. 2015). Consequently, defendants are precluded from hiding behind the doctrine of mutual mistake to defeat Cao's claim. *See id.*

The grapeshot of defendants' remaining arguments falls harmlessly for their lack of merit. For instance, they seek to avoid their obligations under the loan agreement because Cao and Landco were represented by the same attorney. Yet a "bare allegation of joint representation," without further evidence of wrongdoing, does not warrant rendering a contract unenforceable. *Matter of Est. of Cassone*, 63 N.Y.2d 756, 758, 469 N.E.2d 835, 480 N.Y.S.2d 317 (1984). Defendants do not allege, much less proffer evidence of, any improper conduct on behalf of their attorney.

They also separately contend that because the agreement is entirely in English, and because Cao, Lu, and Bao, "are not primarily English speakers," there are "doubts" as to whether the parties could fully comprehend its terms. Defs.' Opp'n. at 5. However, absent evidence of unconscionable conduct by either Cao or the attorney representing defendants—and there is none—an inability to understand the English language does not make a contract unenforceable. *Holcomb v. TWR Express, Inc.*, 11 A.D.3d 513, 514, 782 N.Y.S.2d 840, 841 (2004).

Finally, defendants complain that the personal guaranties are invalid for lack of consideration. Defs.' Opp. Mem at 6. Not so. Cao's initial loan to Landco "constitute[d] clear consideration for defendants' guaranties." *First New York Bank for Business v. Demarco*, 130 B.R. 650, 652 (S.D.N.Y. 1991) ("Consideration passing from a creditor to a principal obligor is

sufficient consideration to support a third-party guaranty of the principal obligor's debts.")

(citing *Walter E. Heller & Co. Inc. v. Cox*, 343 F. Supp. 519, 527–28 (S.D.N.Y. 1972), *aff'd*, 486

F.2d 1398 (2d Cir. 1973)).   Accordingly, in the absence of any actual dispute as to the

controlling law and the material facts, Cao is entitled to summary judgment on her breach of

contract and breach of personal guaranty claims.

Procedurally, Cao requests that the Court enter final judgment, pursuant to Federal Rule

of Civil Procedure 54(b) with respect to the causes of action upon which summary judgment

have been entered.   Rule 54(b) permits a district court, in cases involving multiple claims or

parties, to direct the entry of a final judgment "as to one or more but fewer than all of the claims

or parties only upon an express determination that there is no just reason for delay."   *Steve's

Homemade Ice Cream, Inc. v. Stewart*, 907 F.2d 364, 365 (2d Cir. 1990).   However, a grant of

"partial summary judgment limited to the issue of liability, which reserves the issue of damages

and other relief is not 'final' within the meaning of 28 U.S.C. § 1291," and, therefore, not

appropriately certifiable for final judgment within the letter and spirit of Rule 54(b).   *Linde v.

Arab Bank*, *PLC*, 882 F.3d 314, 323 (2d Cir. 2018).   Although liability on the fourth and sixth

causes of action has now been fully resolved by this order, the amount of damages Cao is entitled

to on these claims is yet to be fully litigated.   As a consequence, the Court declines to enter final

judgment pursuant to Rule 54(b), without prejudice to plaintiff renewing her request once the

issue has been litigated.   *See Bank of Am., N.A. v. Airborne, Inc.*, No. 15 Civ. 6451P, 2017 WL

344969, at *4 (W.D.N.Y. Jan. 24, 2017).

## Conclusion

In line with the foregoing, plaintiff's motion for partial summary judgment, with respect

to her fourth and sixth causes of action, is granted.

The parties are directed to contact Magistrate Judge Robert M. Levy for continued pre-

trial management.

So ordered.


Dated: Brooklyn, New York
       June 19, 2022


/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge